ABLE METAL PRODUCTS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69038.   Filed August 31, 1959.

*John L. Davies, Jr., Esq.,* for the petitioner.
*William O. Allen, Esq.,* for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income tax as follows:

1954 _____ $1,003.69
1955 _____ 7,278.13

The only question for decision is whether petitioner derived income in the taxable years under section 543(a)(5), I.R.C. 1954, i.e., "personal holding company income."

FINDINGS OF FACT.

The stipulated facts are so found and the stipulation is included by this reference.

Petitioner, Able Metal Products, Inc., is an Ohio corporation organized in September 1954, qualified to do business and doing business in the State of Ohio during the years here in question. The corporation ever since has been qualified to and doing business in the State of Ohio.

Petitioner filed its income tax returns for the years 1954 and 1955 with the district director of internal revenue, Columbus, Ohio.

On October 1, 1954, petitioner entered into a contract with Kool Vent Aluminum Awning Corporation of Indiana. The contract provided in part as follows:

*SALES REPRESENTATIVE AGREEMENT*

THIS AGREEMENT made and concluded as of the 1st day of October, 1954, by and between KOOL VENT ALUMINUM AWNING CORPORATION OF INDIANA, hereinafter referred to as Manufacturer, Party of the First Part, and ABLE METAL PRODUCTS, INC., Columbus, Ohio, hereinafter referred to as Representative, Party of the Second Part,

WITNESSETH:

WHEREAS, Manufacturer is engaged in the manufacture of metal awnings, and

WHEREAS, George A. Zajicek, Jr. and Don R. Zajicek, who are principal officers and sole stockholders in Representative, have been for the past several years associated as dealers closely with the Manufacturer, and have a wide and varied experience of the products of the Manufacturer and the promotion and sales of said products and dealings with the Manufacturer.

WHEREAS, the said George Zajicek and Don Zajicek through Representative are desirous of performing services to Manufacturer in the matter of promotion and sales and service of the commodities sold within certain defined areas.

NOW THEREFORE, in consideration of the mutual covenants on the part of each party hereto to be performed, which it is understood and agreed is for their mutual benefit, it is agreed as follows by and between the parties hereto:

1. Manufacturer agrees to and does hereby employ Representative from the date hereof until July 10, 1955 as Sales Manager and Sales Representative and Service Manager and Service Representative of the Manufacturer's products in the territories hereinafter described, to-wit:

    *       *       *       *       *       *       *

3. Representative, during the period of this agreement,

a) Shall contact dealers of the Manufacturer in territory herein described, make recommendations to the dealers and to the Manufacturer as to the promotion and enlargement of the sales of the Manufacturer's products in the territory of the dealers and of the Representative;

b) Will further arrange sales clinics and provide and distribute sales information and literature;

c) Shall act as liaison between the dealers and the Manufacturer in all instances, except that orders from the dealers shall be sent by the dealer direct to the Manufacturer, the latter causing a copy of the order to be furnished the Representative at the time the order is received by the Manufacturer;

d) Shall supervise, adjust and arbitrate relations between dealers and questions of dealer relationships among themselves, and shall allocate and reallocate territories heretofore assigned to the dealers, enlarging and/or diminishing the territories of various dealers, and shall have authority to terminate a dealer's agreement, to arrange and negotiate new and additional dealers in areas not in conflict with existing dealers. * * *

\* \* \* \* \* \* \*

i) Representative agrees, during the period of this agreement, to canvass and investigate the complete extent of its territory and to establish new dealerships and make recommendations for the creation of same to the end that the total area of the Representative's territory shall be adequately and fully covered by dealers and sub-dealers authorized and qualified to sell and install the Manufacturer's product.

j) Representative shall make recommendations to the Manufacturer as to its advertising program within its territory, making recommendations as to which parts of any of its advertising shall be devoted to newspapers, billboards, radio, television or other means, and in which areas the same shall be provided and the extent, frequency and amount of same. All recommendations pertaining to advertising shall be considered on the basis of benefits to the respective dealers and wherever at all possible try to establish what fees, if any, shall be borne by Manufacturer, Representative and/or dealers. The actual determination of the advertising program and the authorization of the contracting for same shall remain the obligation of the Manufacturer, or parties to be bound.

k) The Representative shall make recommendations to the Manufacturer for the establishment of quotas for the dealers for periods covered by this agreement and for the period immediately following this agreement.

4. This agreement may be renewed for a period of one year by the mutual consent of the parties hereto, acting by and through their proper officers, by endorsements hereto to be made thirty (30) days prior to the expiration hereof. * * *

\* \* \* \* \* \* \*

6. It is understood by the parties hereto, that the Representative is a corporation and that the principal stockholders and officers are George A. Zajicek, Jr. and Don R. Zajicek; that the Manufacturer enters into this agreement with the Representative by reason of the former's relationship with the said individuals; that the said George and Don Zajicek shall personally supervise the services to be rendered Manufacturer under this contract, devoting as much of their own time and services as they in their sole discretion shall deem necessary and using such other personnel as they in their sole discretion shall deem necessary and expedient. Should said George and Don Zajicek terminate their interests or their employment with said Representative during the period of this agreement, that this agreement may be immediately terminated at the option of the Manufacturer.

\* \* \* \* \* \* \*

12. Representative shall have no right to assign this contract except to Don Zajicek and George Zajicek individually.

During the taxable year 1954 petitioner's gross income consisted entirely of payments received under said contract. During the taxable year 1955 petitioner's gross income consisted of $400 gross rental income and $17,634.81 in payments received under said contract.

During the years in question, petitioner had authorized and outstanding 100 shares of common stock which constituted its entire capitalization. During these years George A. Zajicek, Jr., owned 50 per cent of the outstanding common stock of petitioner and Don R. Zajicek owned the other 50 per cent of the common stock.

During the taxable years 1954 and 1955 petitioner had no employees other than Don R. Zajicek and George A. Zajicek, Jr.

The services required to be rendered by petitioner under the contract of October 1, 1954, required extensive knowledge of and experience in the business of merchandising awnings.

The contract of October 1, 1954, was entered into between Kool Vent and petitioner with the express understanding that the essential services under the contract were to be rendered by George A. Zajicek, Jr., and Don R. Zajicek.

### OPINION.

It is our opinion that the Commissioner's brief herein so squarely answers the main arguments of petitioner that we could add little in a more extended opinion. The Commissioner's argument is as follows:

Section 542 of the Internal Revenue Code of 1954 provides that a corporation will be deemed to be a personal holding company if:

1. At least 80 per cent of its gross income for the taxable year is personal holding company income as defined in Section 543 and

2. At any time during the last half of the taxable year more than 50 per cent in value of its outstanding stock is owned directly or indirectly by or for not more than five individuals.

At all times here material all of the issued and outstanding stock of petitioner has been owned equally by two individuals, Don R. Zajicek and George A. Zajicek, Jr. Consequently there can be no question that the stock ownership requirement of Section 542 is met in this case.

With respect to the gross income requirement it is agreed that over 80 per cent of petitioner's gross income for both years here in question was derived from its contract with Kool Vent. Therefore, if such income is determined to be personal holding company income, it must follow that petitioner was a personal holding company during the taxable years 1954 and 1955.

Section 543 provides in part as follows:

\*          \*          \*          \*          \*          \*          \*

"(a) GENERAL RULE.—For purposes of this subtitle, the term 'personal holding company income' means the portion of the gross income which consists of:

\*          \*          \*          \*          \*          \*          \*

(5) PERSONAL SERVICE CONTRACTS.—

(A) amounts received under a contract under which the corporation is to furnish personal services; if some person other than the corporation has the

right to designate (by name or by description) the individual who is to perform the services, or if the individual who is to perform the services is designated (by name or by description) in the contract; and

(B) amounts received from the sale or other disposition of such a contract.

This paragraph shall apply with respect to amounts received for services under a particular contract only if at some time during the taxable year 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for the individual who has performed, is to perform, or may be designated (by name or by description) as the one to perform, such services."

The contract here in question required petitioner to perform services which are highly personal in nature. Under the contract petitioner was required to make recommendations to the dealers and to the manufacturer as to the promotion and enlargement of sales in the territory; arrange sales clinics and provide and distribute sales information and literature; act as a liaison between the dealers and the manufacturer; supervise, adjust and arbitrate relations between dealers; allocate sales territories; terminate dealerships; arrange and negotiate new dealerships; make recommendations to the manufacturer concerning advertising within its area; and make recommendations to the manufacturer for the establishment of dealer quotas. As Don Zajicek described petitioner's function under the contract:

"A. Well, it was a matter of going between these dealers and assisting them in any way, suggesting, possibly taking one the idea from another dealer to another, such as advertising, helping them break in new salesmen, or installation problems, or from a warranty effect, such as John Q. Public thinks is a defect in the awning. The dealer is in the middle. The factory has a representative there to decide whether it is defective awning or not, and they settle any complaints."

Services such as these require both intimate knowledge and long experience in the business of merchandising awnings. Petitioner being a newly organized corporation did not and could not have had such experience and knowledge. However, George and Don Zajicek individually did have such knowledge and experience. For many years prior to the formation of petitioner they have served as salesmen and retail distributors of the manufacturer's product and had acquired an intimate knowledge of the product and its merchandising. These facts were expressly recited in the preamble to the contract and formed the inducement to the execution of the contract by Kool Vent.

Not only did Kool Vent have the right to designate the individuals who were to perform the services under the contract, it actually did name Don and George Zajicek as those individuals. In paragraph 6, the contract provided:

"6. It is understood by the parties hereto, that the Representative is a corporation and that the principal stockholders and officers are George A. Zajicek, Jr. and Don R. Zajicek; that the Manufacturer enters into this agreement with the Representative by reason of the former's relationship with the said individuals; that the said George and Don Zajicek shall personally supervise the services to be rendered Manufacturer under this contract, devoting as much of their own time and services as they in their sole discretion shall deem necessary and using such other personnel as they in their sole discretion shall deem necessary and expedient. Should said George and Don Zajicek terminate their interests or their employment with said Representative during the period of this agreement, that this agreement may be immediately terminated at the option of the Manufacturer."

In addition to supervising the performance of the agreement as required by the contract, Don and George Zajicek personally did all the work. They were

the only employees of petitioner, and as such they performed substantially all of petitioner's services. In view of these facts there can be no doubt that the contract was intended to and did require that Don and George Zajicek perform the services in question.

Further evidence, if any is needed, of the intention of the parties to the contract is provided by the fact that the contract was expressly made not assignable to anyone except the Zajiceks individually and that if the Zajiceks severed their connection with petitioner Kool Vent had the right to terminate the contract immediately. If, as petitioner contends, the personal services of Don and George Zajicek were not essential to the contract, Kool Vent would not have found it necessary to insert these provisions in the contract for its protection.

In *General Management Corporation* (1942) 46 B.T.A. 738, aff'd. (C.C.A. 7th 1943) 135 Fed. 2d 882, 31 A.F.T.R. 80, cert. den. (1943) 320 U.S. 757, the taxpayer corporation was engaged in the business of rendering financial advice and rehabilitation services to other corporations. More than 50 per cent of the stock was owned by one Grant Gillam, who was an expert in this field. The taxpayer corporation entered into two contracts with other corporations, both of which contracts were in issue in that case. In one contract the taxpayer agreed that it would make a study of the operation, management and sales problems of its client and submit recommendations for improvement. No individual was named in the contract and the client was not given the right to designate the individual to perform the services. The Board held that this contract was not a personal service contract. The second contract in question in that case was similar to the first, except that Gillam was specifically named and the taxpayer was required to provide his services to the client. Further, the contract provided that in the event that Gillam should die or become incapacitated, and if an acceptable substitute were not provided, the client could terminate the contract. This contract was held to be a personal service contract, even though many of the services rendered by the taxpayer corporation were performed by persons other than Gillam.

The analogy between the contract in question in this case and the second of the two contracts in question in the *General Management* case is very strong. In each contract the controlling stockholder or stockholders was specifically named as the person to perform services. Further, in each contract the client was given the option to terminate the contract should the services of the named individual or individuals become unavailable.

The recent case of *Allen Machinery Corporation* (1958) 31 T.C. ____ (No. 45) (A., I.R.B. 1959–17, 8) is also squarely in point here. In that case, as in *General Management*, two contracts were involved.[1] In the first contract the taxpayer corporation agreed to service a contract between its client and the client's customer. The contract in question did not specifically name or otherwise designate the persons to perform the services and did not give the client the right to so name or designate. This Court accordingly held that this contract was not a personal service contract. The second contract in question in that case had originally been made between the taxpayer's controlling stockholder individually and the client. The contract provided that the stockholder would act as exclusive sales agent in a designated area for the client's products. It further provided that the stockholder was to provide fully competent and qualified service engineers to meet the needs of the purchasers of the product and that the stockholder would use his best efforts to introduce and sell such products throughout the designated territory. The contract further provided that the stockholder should have the right to assign his interest in the contract to the Allen Machinery Corporation. However, the client reserved the right to terminate the contract

in the event the stockholder should cease to render substantial technical services to Allen Machinery Corporation. The contract was shortly thereafter assigned by the stockholder to the taxpayer corporation. Thereafter the stockholder devoted only a small portion of his time to the affairs of the taxpayer. His services were limited solely to the supervision, direction and coordination of the operations of the taxpayer's staff, the bulk of the sales and engineering services provided by the taxpayer being actually performed by the taxpayer's staff of salesmen and engineers. In addition to the stockholder in question, the taxpayer corporation had six other employees on its staff. This Court held that this contract was a personal service contract. It said in part as follows:

"Although F. J. Allen only visited the United States for a period of 3 months during each of the years in issue and despite the fact that the bulk of the work performed pursuant to the contract was actually performed by petitioner's staff of salesmen and engineers rather than by Allen, it is nevertheless apparent that Hepburn looked to Allen personally to provide the managerial and supervisory services which were required for the satisfactory services which were required for the satisfactory conduct of petitioner's employees. It is clear from the record herein that Allen alone possessed the authority to control the policies and activities of petitioner. Allen's actual participation consisted primarily of the supervision and coordination of sales and engineering service.

"Hepburn's reliance upon F. J. Allen obviously was founded upon the successful business relationship existing between them which had extended over a period of many years and as a result of which Allen had promoted and sold Hepburn products in Europe. By contractually requiring that Allen either control petitioner or that he provide the petitioner with technical advice on a substantial basis, Hepburn was assured that Allen would assume personal responsibility with respect to the promotion and sale of its products in the United States. Consequently, the contract was made expressly contingent upon either the corporate control or the technical advice of F. J. Allen."

It should be noted that in the *Allen Machinery* case as in the case here under consideration, the contract required only that the controlling stockholder supervise the services to be rendered by the taxpayer. If the contract in question in the *Allen Machinery* case was a personal service contract, then *a fortiori* the contract here in question must also be a personal service contract. For here all of the *supervision, plus* all of the *services*, with inconsequential exceptions, were performed by the Zajiceks. Petitioner, unlike Allen Machinery Corporation, had no other employees and its services were solely those of its controlling stockholders Don and George Zajicek.

It must follow in the light of the above authorities that during the taxable years 1954 and 1955 petitioner was a personal holding company.

ª The *General Management* case involved section 403(e) of the Revenue Act of 1938, and the *Allen Machinery* case involved section 502(e) of the 1939 Code. Both of these sections are identical in terms with section 543(a)(5) of the 1954 Code.

Petitioner argues further that section 543(a)(5) and its predecessor sections in prior revenue acts cover only personal service contracts involving not more than one individual; hence, that since the contract in this case covers two individuals income received thereunder is not covered by the Code. We think the argument has no merit. As the Commissioner points out, section 7701(d)(1) of the 1954 Code refers to section 1 of Title 1 of the United States Code for the definition of singular words as used in the Internal Revenue Code. Section 1 of Title 1 of the United States Code provides in part as follows:

1. Words denoting number, gender, and so forth.

In determining the meaning of any Act of Congress, unless the context indicates otherwise—

words importing the singular include and apply to several persons, parties, or things;

words importing the plural include the singular;

We think the Commissioner is correct in his determination and his action is approved.

*Decision will be entered for the respondent.*