THOMAS P. BYRNES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8679–78.     Filed December 4, 1979.

*Francis X. McCormick*, for the petitioner.
*Bernard Wishnia*, for the respondent.

NIMS, *Judge:* Respondent determined deficiencies of $20,460, $24,566, and $31,830 for the respective taxable years ending March 31, 1973, March 31, 1975, and March 31, 1976. The issue for our decision is whether amounts petitioner received for the performance of contractual obligations constituted personal holding company income within the meaning of section 543(a)(7),[1] thereby subjecting petitioner to personal holding company tax under section 541.

---

[1] Unless otherwise provided, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable years at issue.

## FINDINGS OF FACT

Some of the facts have been stipulated by the parties. Their stipulation and the exhibits specified therein are incorporated in these findings.

Petitioner Thomas P. Byrnes, Inc., is a New Jersey corporation which had its principal place of business in Scotch Plains, N.J., when the petition in this case was filed.

Petitioner was incorporated under the laws of the State of New Jersey in 1963. Since April 1, 1968, petitioner has had 100 shares of common stock issued and outstanding, owned by the following individuals:

| Shareholder | Shares |
| --- | --- |
| Thomas P. Byrnes | 67 |
| Elsie M. Byrnes | 9 |
| Deborah Byrnes | 8 |
| Robert Byrnes | 8 |
| Lynn Byrnes | 8 |

Thomas P. Byrnes (Byrnes) has been petitioner's president since its inception. As a result of his experience with the Fram Corp. and the Detroit Gasket Manufacturing Co.[2] Byrnes had acquired knowledge regarding the application and use of oil filters and gaskets, particularly in the automotive industry. In 1956, Byrnes became employed by the Goshen Rubber Co. (Goshen) as one of its sales representatives.

Goshen manufactures precision automobile filter gaskets. Due to his prior sales experience, Byrnes' expertise was especially well suited to Goshen's needs. By the time of the commencement of his relationship with Goshen, Byrnes had developed contacts in the filter industry in addition to having obtained a detailed and technical knowledge of precision automobile filter gaskets. Consequently, he has assisted Goshen in engineering many of its filter gaskets. He has also been one of Goshen's largest sales producers.

Byrnes sold Goshen's products as a sole proprietor between 1956 and April 16, 1963, the date of petitioner's incorporation. Byrnes by then had decided to conduct his sales business in

---

[2]Byrnes worked as a product employee and foreman for the Fram Manufacturing Co. from 1939 to 1941. He was employed as a rubber products salesman by the Fram Corp. from 1946 to 1948 and by the Detroit Gasket Co. from 1948 to 1956.

corporate form in order to limit any potential product liability resulting from the sale of Goshen's products and to improve his tax situation, especially by way of a better pension plan. During the 3 years in issue, petitioner's only employees have been Byrnes and a secretary.

Byrnes and Goshen had entered into a written sales representation contract on May 1, 1962. This contract provided in part:

## MISCELLANEOUS

1. Representative hereunder, being an independent sales representative, shall pay all of his own traveling expenses, hotel expenses and entertainment costs, thereby waiving all claims therefor against Company, unless otherwise specifically authorized in writing by GRC.

2. Representative shall not hire or in any manner engage the services of additional men to call on GRC customers in the territory assigned to Representative without first discussing it with the Sales Manager or Vice President in charge of sales of GRC and obtaining written permission so to do.

At the time of petitioner's incorporation, the May 1, 1962, contract was terminated and replaced by an identical (except for the parties to the contract) oral contract between petitioner and Goshen, which constituted a novation of the superseded prior written contract.

On April 14, 1972, petitioner and Goshen executed a new written contract. Like the previous agreement between petitioner and Goshen, nowhere was Byrnes individually named or described. This contract stated, in pertinent part:

## TERMINATION POLICY

3. In the event GRC any time hereafter shall determine that Representative is either unwilling or incapable of making satisfactory presentation and explanation of the technical features of Company's products, to customers and prospective customers, or, is unwilling or unable technically to reasonably assist such customers in the adaptation of GRC products to the intended use thereof by customer, or, in the event GRC shall determine that Representative has been disloyal in any respect, specifically including the furnishing directly or indirectly of "know how" and technical information to competitors of GRC, has been dishonest or has committed a crime involving moral turpitude, or, for any other reason adjudged by Company to be detrimental to the best interests of Company, in any of such events, GRC shall have the absolute right to forthwith terminate the within Agreement. In such event, Representative's termination pay will be limited to and based upon commissions accrued to the date of such termination, including shipments made on the date of such termination and none thereafter.

\*    \*    \*    \*    \*    \*    \*

## MISCELLANEOUS

2. Representative shall not hire or in any manner engage the services of additional sales personnel to call on GRC customers in the territory assigned to Representative without first discussing it with the Sales Manager or Vice President in charge of sales of GRC.

\*    \*    \*    \*    \*    \*    \*

9. This Agreement shall continue in full force and effect for the period of one (1) year from the date hereof, and, from year to year thereafter unless the same is sooner terminated for any of the reasons or causes herein specified.

\*    \*    \*    \*    \*    \*    \*

11. The within Agreement constitutes the only agreement between the parties hereto and may be modified, altered or changed, only in writing, endorsing hereon, or by separate written agreement.

Petitioner and Goshen entered into revised contracts on October 30, 1975, and on March 1, 1976. These contracts were similar to the 1972 contract although they did not contain paragraph number 2 under the "Miscellaneous" heading quoted above. The following paragraphs are from both of these contracts:

## RELATIONSHIP CREATED

1. The Representative is not an employee of the principal for any purpose whatsoever but is an independent Sales Representative. The Company is interested only in the results obtained by the Representative who shall have sole control of the manner and means of performing under the Contract. However, the Company in unusual situations shall have the right to request Representative to collect accounts, investigate consumer complaints, attend sales meetings, periodically report to GRC, conform to any policy of selling effort, follow prescribed itineraries, keep records of business transactions and make adjustments.

\*    \*    \*    \*    \*    \*    \*

Any new salesman may be required to visit GRC affiliated plants at the direction of GRC for instruction and to satisfactorily pass such oral or written examination in these areas prior to being qualified to represent GRC in the sales area. \* \* \*

For the years in question, petitioner reported the following amounts as gross income:

| TYE Mar. 31— | Commissions | Gross rent | Interest | Total income |
|---|---|---|---|---|
| 1973 | $151,015 | $17,758 | $2,425 | $171,198 |
| 1975 | 160,002 | 20,280 | 4,444 | 184,726 |
| 1976 | 170,069 | 20,740 | 3,234 | 194,043 |

The commissions were attributable to sales of Goshen's rubber products.

## OPINION

The issue for our decision is whether the sales commissions petitioner received for the sale of Goshen's products represented personal holding company income within the meaning of section 543(a)(7).[3] The parties have stipulated that the stock ownership requirement of section 542(a)(2) is satisfied.

It is respondent's position that Goshen had the right to designate the individual(s) who would perform the services required by the sales representation contracts and, in effect, designated Byrnes. Petitioner maintains that Goshen had no such right and did not designate Byrnes.

At the outset, we should make note of what we are not required to decide in this case. We are not required to decide whether Byrnes retained such control over the commission income received by petitioner as to cause such income to be taxable to Byrnes under section 61, and not to petitioner. Cf. *Foglesong v. Commissioner*, T.C. Memo. 1976–294. Unlike the situation in *Foglesong*, Byrnes, individually, is not a party to this proceeding. Thus, lacking an essential actor in the drama before us, we must make do with what we have, and for reasons stated below, we hold for petitioner.

Respondent contends that Goshen, in effect, possessed a veto power over petitioner's ability to hire either additional sales personnel or a replacement for Byrnes. According to respondent, this veto power amounted to a right to designate under section 543(a)(7) and was manifested by: the provision in the 1963 contract requiring prior discussion and written permission; the clause in the 1972 contract requiring prior discussion; and the

---

[3] Sec. 543(a)(7) provides:

(7) PERSONAL SERVICE CONTRACTS.—

(A) Amounts received under a contract under which the corporation is to furnish personal services; if some person other than the corporation has the right to designate (by name or by description) the individual who is to perform the services, or if the individual who is to perform the services is designated (by name or by description) in the contract; and

(B) amounts received from the sale or other disposition of such a contract.

This paragraph shall apply with respect to amounts received for services under a particular contract only if at some time during the taxable year 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for the individual who has performed, is to perform, or may be designated (by name or by description) as the one to perform, such services.

clauses in the 1975 and 1976 contracts that empowered Goshen to require new sales personnel to visit one of its plants to undergo instruction and testing.

We do not agree with respondent's interpretation that these clauses gave Goshen the right to designate who would perform the services for petitioner. At most, only the 1963 contract, with its clause requiring Goshen's prior written consent, conferred upon Goshen the power to veto petitioner's choice of sales personnel. Although such could arguably constitute a negative right to designate, the 1963 contract only relates to 13 days of the relevant 3-year period. Any finding that this contract gave Goshen a right to designate would have no ultimate bearing on petitioner's personal holding company status for the taxable year ending March 31, 1973, since substantially all of the commissions for that year were received under the 1972 contract.[4]

The 1972 contract is the most important one in terms of our decision since it covers most of the period in question.[5] In this contract, petitioner was no longer required to obtain Goshen's written permission in order to hire a new employee. A prior discussion with the sales manager or vice president of sales was all that was required. This language does not give Goshen the right to designate the individual(s) who would perform under the contract. Joseph Lantz, Goshen's senior vice president and former vice president in charge of sales and marketing, testified that these discussions were generally informal and often held long after the new employee had been selling Goshen products, so that several topics might be considered at the same meeting. Lantz testified:

all of our representatives, they are commission salesmen. They pay all their own expenses. We don't help with their expenses, their entertainment or anything. And, as such, they are independent operators according to our legal people. So they have a right to hire and fire who they choose. All we wanted to do is be certain that the customers are serviced properly so we can maintain our position in the industry. So when we discussed it with him, it's up to him to do the investigation for new personnel.

If you look at the caliber of our representatives, you'll find that we had

---

[4] A corporation is a personal holding company if 60 percent of its adjusted gross income, as defined in sec. 543(b)(2), for the taxable year is personal holding company income. Petitioner would be a personal holding company for the taxable year ending Mar. 31, 1973, only if the commissions received under the 1972 contract fall within the sec. 543(a)(7) definition of personal holding company income.

[5] This agreement covers the period from Apr. 14, 1972, to Oct. 30, 1975, inclusive.

extreme confidence in their judgment and it wasn't necessary for me to pass on any new applicant.

The testing requirement in the 1975 and 1976 contracts likewise does not confer on Goshen the right to designate who will perform. These clauses merely allow Goshen to insure that those who sell its products are technically qualified to do so.

Respondent also argues that each of these contracts designates Byrnes as the individual who would perform the services. Granted that Byrnes was the driving force behind petitioner's operations, nowhere in any of the agreements is he designated, either by name or description, as the individual who would perform under the contract. Only petitioner was bound to perform after its incorporation.

The cases cited by both parties support this analysis. In *General Management Corp. v. Commissioner*, 46 B.T.A. 738 (1942), affd. 135 F.2d 882 (7th Cir. 1943), cert. denied 320 U.S. 757 (1943), a contract between petitioner and another corporation expressly named a 50-percent shareholder of the petitioner as the specific individual to perform comptroller services for the other corporation. There was also a clause providing for termination of the contract if the individual died and the corporation receiving the services could not find a satisfactory replacement. On these essential facts, the Board had no difficulty in finding personal holding company income.

In *Allen Machinery Corp. v. Commissioner*, 31 T.C. 441 (1958), the contract that was held to generate personal service income was made directly with an individual and was subsequently assigned to the taxpayer-corporation. There, it was evident that the third-party corporation was looking to the individual, personally, for performance: in the event of an assignment, the contract provided for cancellation if the individual ceased to control or furnish advice to the assignee corporation. Again, the individual in question was specifically named in the contract.

In *Able Metal Products, Inc. v. Commissioner*, 32 T.C. 1149 (1959), another case holding that the contract resulted in personal holding company income, the shareholders were specifically designated by name and were required to personally supervise the services which the corporation would render. Further, the third-party corporation could terminate the contract if the individuals terminated their interests in or employment with the corporation.

The contract in *Kurt Frings Agency, Inc. v. Commissioner*, 42 T.C. 472 (1964), affd. per curiam 351 F.2d 951 (9th Cir. 1965), involved an individual who represented various clients in the entertainment field as their manager. The Court held that amounts received pursuant to the contract resulted in personal holding company income since the manager was specifically designated by name in the contracts as the individual specified to perform the required services.

It is apparent from the above cases that petitioner's contracts with Goshen did not produce personal holding company income within the meaning of section 543(a)(7). There is no specific naming of *Byrnes* individually as the one who was obligated to perform under the various sales representation agreements. Byrnes' failure to supervise the work petitioner had contracted to perform would not, in and of itself, provide the basis for a breach of contract action as would have been the case in *Kurt Frings*. Likewise, there is no clause expressly requiring Byrnes' continued employment with, or interest in, petitioner similar to the one in *Able*. If, for example, Byrnes had sold his interest to his son, Goshen would not thereby have possessed the right to terminate the contract simply because Byrnes was no longer rendering his services on behalf of the petitioner.

Respondent's attempts to distinguish *S. O. Claggett v. Commissioner*, 44 T.C. 503 (1965), and *Foglesong v. Commissioner, supra,* two cases finding an absence of personal holding company income, are without merit. In *Claggett,* an individual and a corporation formed a partnership. The individual subsequently formed a corporation which was substituted as partner under the partnership agreement. The Commissioner argued that the partnership agreement constituted a personal service contract under section 543(a)(7), and that the individual, Sam Claggett, was personally obligated to perform services for the original corporate partner by reason of the prior agreement. Contrary to respondent's interpretation of *Claggett,* the Court did not hold that the partnership agreement failed to constitute a personal service contract under section 543(a)(7). That issue was left open. Rather, the Court based its decision on the lack of designation since there was no contractual provision "specifying by name or description that Sam would be the person to perform the services."

*Foglesong* involved a situation similar to the instant case: the

contract obligated a closely held corporation to perform services under a sales representation contract. The Court held that contract did not beget personal holding company income. Since the contract was with the corporation, it, and not the individual shareholder, was the party obligated to perform.

Respondent has insisted that we adopt a finding similar to the one expressed in Rev. Rul. 75-67, 1975-1 C.B. 169, namely that a taxpayer, by agreeing to perform services that are so unique (via a specific individual) as to preclude substitution, has effectuated the individual's designation. We cannot accept this characterization of Byrnes' services. Byrnes did play an important role in Goshen's sales operations, and his services were indeed valuable. It cannot, however, be said that his services were so valuable and unique as to be irreplaceable.

Respondent has maintained that the contracts before us clearly demonstrate the intent of the parties that Byrnes would personally act as petitioner's sales representative in this technical field. We fail to perceive such intent. The most reliable evidence of this intent surely would have been a specific designation of Byrnes in the contract. Although the parties anticipated that he would be rendering his services on petitioner's behalf, there simply was no contractual obligation for him to do so. The mere expectation that Byrnes would be the individual to carry on the expected activities on behalf of Goshen, without specific designation thereof, is insufficient to transform the amounts received into personal holding company income.

We hold that the commissions received were not personal holding income under section 543(a)(7). As a result, petitioner is not subject to personal holding company tax under section 541.

*Decision will be entered for the petitioner.*