JAMES J. MORRISON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; J.J. MORRISON CONSULTANTS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morrison v. Commissioner
Docket Nos. 11802-78, 1518-81, 1519-81.
United States Tax Court
T.C. Memo 1982-613; 1982 Tax Ct. Memo LEXIS 137; 44 T.C.M. (CCH) 1459; T.C.M. (RIA) 82613; October 20, 1982. Marcus Plotkin and Robert W. Siegel, for the petitioners. James R. Rich, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in income tax of petitioner James J. Morrison for the years 1974, 1975, 1976, and 1977 in the amounts of $32,202.02, $18,256.51, $31,495.16, and $2,997.34, respectively. Respondent determined deficiencies in income tax of petitioner J.J. Morrison *142 Consultants, Inc., for the taxable years ended April 30, 1976, and April 30, 1977, in the respective amounts of $1,562.80 and $2,206.32. The issues presented for decision are (1) whether certain fees for consulting services received by J.J. Morrison Consultants, Inc. were income of petitioner James J. Morrison and taxable to him rather than to his wholly owned corporation under the assignment of income doctrine; (2) whether respondent properly reallocated such consulting services income from the corporation to Mr. Morrison pursuant to section 482; [1] (3) whether for its taxable years ended April 30, 1976, and April 30, 1977, the corporation was a personal holding company and therefore subject to a personal holding company tax on its undistributed personal holding company income; (4) whether certain expenditures made by J.J. Morrison Consultants, Inc., were properly deductible business expenses; and (5) whether certain amounts expended by the corporation were for the personal benefit of James J. Morrison so as to constitute distributions made by the corporation with respect to its stock under section 301. *143 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner James J. Morrison resided in Windsor, Ontario, Canada, at the time of the filing of his petitions herein. Petitioner filed a U.S. Nonresident Alien Income Tax Return for the years 1974, 1975, 1976, and 1977 with the Internal Revenue Service Center, Cincinnati, Ohio. J.J. Morrison Consultants, Inc., is a corporation duly incorporated under the laws of the State of Michigan. At the time of the filing of its petition herein, J.J. Morrison Consultants, Inc., maintained its principal place of business in Birmingham, Michigan. For its taxable years ended April 30, 1976, and April 30, 1977, J. J. Morrison Consultants, Inc., filed U.S. Corporation Income Tax Returns with the Internal Revenue Service Center, Cincinnati, Ohio. Petitioner James J. Morrison was born in 1932 and has been a citizen and resident of Canada his entire life up through the time of the trial of this case. Mr. Morrison, upon his graduation from high school, went to work in the steel mills at age 18. He subsequently served a 7-year apprenticeship as a roller and stripmiller at Algoma Steel, a Canadian corporation *144 involved in the steel business, which he completed in 1963. Mr. Morrison thereafter became a general foreman involved in setting up a wide coal mill for Algoma Steel. In 1966, Mr. Morrison ceased being the general foreman at the coal mill and became involved in setting up an automotive stamping business for Algoma Steel. By 1970 or 1971, Mr. Morrison was considered to be an expert in the automotive stamping business by many people. In 1972, he was promoted to a position as special assistant to the senior vice president of sales for Algoma Steel. Additionally, while working for Algoma Steel, Mr. Morrison developed a steel pallet for which that corporation obtained a Canadian patent. Mr. Morrison, as a result of this past work, possessed considerable experience and expertise in the steel and aluminum businesses and additionally had many contacts and acquaintances among persons in or connected to such industries. Kasle Steel Corp. (Kasle Steel) is a Michigan corporation engaged in the steel processing business. The corporation is a closely held, family owned corporation, and all of its principal officers are members or relations of the Kasle family. Kasle Steel processes steel *145 into a form which can be immediately used by other businesses in the manufacture of products or items. Kasle Steel, in 1972, became interested in entering into blanking operations. A blanking operation involves using large automatic presses to form coiled steel into blanks which can then be stamped into a finished part or product. As a result of this interest in conducting a blanking operation, one of the officers of Kasle Steel contacted an acquaintance who recommended Mr. Morrison as being an individual who would be knowledgeable about setting up such an operation. This officer subsequently contacted Mr. Morrison and in May or June of 1972 Mr. Morrison met with the officers of Kasle Steel at that corporation's offices. After meeting with Mr. Morrison, the officers of Kasle Steel concluded that he possessed the necessary expertise and decided to hire him. Kasle Steel preferred to hire Mr. Morrison as an employee rather than as an independent consultant. Mr. Morrison thus began working for Kasle Steel in September 1972 as an employee. The president of Kasle Steel felt that hiring Mr. Morrison as an employee gave Kasle Steel more control over the outside activities which Mr. *146 Morrison might engage in. Kasle Steel did not expect that it could completely prevent Mr. Morrison from engaging in outside activities. However, it desired mainly that he first clear and obtain its approval for any outside ventures. As an employee of Kasle Steel, any expenses which Mr. Morrison incurred in performing services for that corporation were reimbursed to him. Mr. Morrison's duties required him to do a good deal of research and investigation off of the company's premises. A good deal of his expenses included the cost of traveling to either conduct research or negotiations on various projects. At some time either before or after Mr. Morrison came to work at Kasle Steel, he and the president of Kasle Steel reached an informal understanding that he would be paid bonuses to reward him for any ventures he worked on which were successful. The purpose of such payments was to enable Mr. Morrison to share to an extent in the profitability of such ventures. In addition to working as an employee for Kasle Steel, Mr. Morrison also did certain consulting work for Acme Processing. Acme Processing is a corporation separate from Kasle Steel, although the president of Kasle *147 Steel and two other members of the Kasle family were the principal shareholders of Acme Processing. The offices of Acme Processing, however, were located on the same property as the offices of Kasle Steel. In one instance, Acme Processing had a job requiring Mr. Morrison to do some research regarding the trucking industry. No written contract was entered into by Acme Processing or Mr. Morrison. However, an oral agreement was reached between Acme Processing and Mr. Morrison that he would be compensated based on the time the research took and on the value of what he found out. Mr. Morrison's role at Kasle Steel was that of a highlevel advisor. Mr. Morrison dealt directly with the top management of Kasle Steel and was privy to its discussions concerning important company decisions. However, it was made clear to Mr. Morrison by the management of Kasle Steel that since the corporation was family owned, he could not expect to be made either an executive or a shareholder. From time to time, after he had begun work for Kasle Steel, Mr. Morrison would suggest to the different officers of Kasle Steel that it would be more beneficial for him to be an independent consultant rather than *148 an employee. Kasle Steel, however, preferred to retain Mr. Morrison as an employee. However, the management of Kasle Steel began to realize that Mr. Morrison's large role in the corporation's activities was making other of the corporation's longtime employees uneasy. These other employees feared that Mr. Morrison was becoming too dominant and might be promoted over them. Mr. Morrison consulted his accountant about setting up a consulting business. The accountant recommended that he incorporate. On March 28, 1974, a meeting was held between Mr. Morrison and his accountant concerning the formation of J.J. Morrison Consultants, Inc. The minutes of this meeting reflect the following: * * * [Mr. Morrison] then called the meeting to order and announced that the meeting had been called to discuss the conduct of a business venture under the name and style of J. J. Morrison Consultants. Mr. Morrison announced that it was his intention to terminate his employment with Kasle Steel & Aluminum Co. as of the end of March and to work as a consultant in the steel and aluminum industry. A general discussion was held with respect to the merits and problems of Mr. Morrison doing business *149 as an individual or in corporate form. Particularly in light of Mr. Morrison's expressed intention of hiring additional consultants to work with and for him, with the attendant liability problems, it was recommended that a corporation be formed. After full and complete discussion, Mr. Morrison directed * * * [his accountant] to assist him in retaining the services of competent legal counsel for purposes of forming a Michigan corporation to be known as J.J. Morrison Consultants, Inc. Mr. Morrison was then advised to conduct all of his consulting activities on behalf of said corporation, as a corporation to be formed, pending the actual formation thereof. It was explained that it would probably require some three to four weeks to secure competent counsel, to prepare the necessary documentation and to cause the Articles of Incorporation to be filed with the State of Michigan. Mr. Morrison's accountant either at this time or subsequently had a meeting with the president of Kasle Steel concerning Mr. Morrison's corporation. On April 22, 1974, articles of incorporation for J.J. Morrison Consultants, Inc. (Morrison Consultants), were filed with the Michigan Department of Commerce. *150 The articles stated that-- The purpose or purposes for which the corporation is organized is to engage in any activity within the purposes for which corporations may be organized under the Business Corporation Act of Michigan. [2]
The authorized capital stock of Morrison Consultants was 50,000 shares of common stock valued at $1 per share. Twenty-five hundred shares of Morrison Consultants' stock were issued to Mr. Morrison. Mr. Morrison has been the sole shareholder of Morrison Consultants for all periods relevant. The first meeting of the shareholders of Morrison Consultants was held on April 26, 1974. At that meeting, corporate by-laws were adopted and Mr. Morrison was named as the sole director of the corporation. On April 26, 1974, the first meeting of the board of directors of Morrison Consultants was held. At that meeting, in addition to certain other administrative *151 matters, Mr. Morrison was elected as the president and treasurer of the corporation and Mr. Morrison's wife was elected as the vice president and secretary of the corporation. Also at the meeting, the following resolutions concerning the adoption of a medical reimbursement plan were adopted: RESOLVED, that the [Morrison Consultants'] Medical Reimbursement Plan, the original of which shall be retained in the corporate records immediately following these minutes, is hereby adopted effective as of April 26, 1974, for the benefit of all employees performing managerial functions for the company, as determined by the Board of Directors; and RESOLVED FURTHER, that James J. Morrison is hereby designated the sole participant of said Medical Reimbursement Plan, as of April 26, 1974, inasmuch as James J. Morrison is the only employee performing a management function for the company at the present time. The following resolutions concerning the compensation to be paid officers of the corporation were also passed: RESOLVED, that, for the company's current fiscal year, and until further action of the Board of Directors, the officers of the company shall serve without salary; and RESOLVED *152 FURTHER, that it is hereby declared to be the policy of the company to pay bonuses to its officers if, as a result of the activities of said officers, the company is sufficiently successful, the amount of any bonus to be paid, the officer or officers to whom paid and the time or times when paid to be in the sole discretion of the Board of Directors. Also adopted at the meeting was a resolution concerning the corporation's entering into an employment agreement with Mr. Morrison. On that same date, Mr. Morrison and Morrison Consultants entered into an employment agreement. This agreement was effective as of April 1, 1974, and contained the following provisions: I. EMPLOYMENT OF MORRISON
A. The Company hereby agrees to employ Morrison as its President and chief operating officer. B. Morrison shall function as the chief operating manager of the Company, and he shall have the responsibility for the general and active management of the business of the Company. The Company will provide offices, clerical staff, equipment and all other facilities necessary or appropriate to the performance of his duties. II. COMPENSATION AND BENEFITS
A. The Company agrees to *153 pay Morrison a base salary in such amount and payable at such intervals as the Board of Directors of the Company may determine from time to time. The Company also represents to Morrison that it is the policy of the Company to pay bonuses to its officers if, in the discretion of the Board of Directors, the operations of the Company have been sufficiently profitable to justify any bonus, the amount of any bonus, the person or persons to whom paid and the time or times when paid being in the sole discretion of the Board of Directors. B. Morrison shall also be entitled to vacations, holidays off, participation in any pension or profit-sharing plan(s) established by the Company and all other fringe benefits applicable to a full-time employee of the Company, in accordance with its normal practices in the ordinary course of its business. III.OBLIGATIONS OF MORRISON
A. Morrison hereby accepts employment with the Company in the capacity above set forth, agrees to serve the Company in such capacity on a full-time, best efforts basis during the term of this Agreement and agrees that, during the term of this Agreement, he will not directly or indirectly engage in any business activity *154 which is or may be in competition with the Company. B. Morrison further agrees to perform such other duties as the Company may assign to him from time to time, including any duties with respect to which the Company may contract or agree with others. The agreement also contained provision for disability payments to be made under a wage continuation plan which was to go into effect in the event that Mr. Morrison was absent from work on account of personal injuries or illness. The employment agreement could be terminated upon the occurrence of the following events: (1) the death of Mr. Morrison; (2) the illness of other disability of Mr. Morrison which would render him incapable of substantially performing his duties for the corporation for a period of 180 consecutive days; (3) bankruptcy, merger, sale of all or substantially all of the assets of the corporation or any other failure or termination of the corporation as a going business concern; and (4) by either party to the agreement upon 60 days' prior written notice to the other party. On December 20, 1974, Kasle Steel, Morrison Consultants, and Mr. Morrison entered into an agreement which was made retroactive to April 1, 1974. *155 This agreement provided in pertinent part as follows: 1. Kasle hereby engages [Morrison] Consultants to provide engineering and other services in connection with its manufacturing and other operations as required and specified by Kasle, and [Morrison] Consultants agrees to furnish such services, which shall include the services of [Mr.] Morrison on a full-time basis. 2. In consideration of the furnishing of such services, Kasle agrees to pay [Morrison] Consultants the sum of FORTY EIGHT THOUSAND DOLLARS ($48,000.00) per year, payable at the rate of FOUR THOUSAND DOLLARS ($4,000.00) on the last day of each and every month. 3. [Morrison] Consultants and [Mr.] Morrison agree that [Mr.] Morrison's services shall be performed exclusively for Kasle during the term hereof. This agreement was to be in effect for a period of one year from April 1, 1974, and would be automatically renewed and continued for successive one-year periods unless either Kasle Steel or Morrison Consultants gave written notice to the other within at least 60 days from the termination of an existing agreement, of its desire to terminate. Additionally, it was expressly provided that the agreement *156 would also terminate "forthwith upon the inability of [Morrison] Consultants for whatever reason to furnish the full-time services of [Mr.] Morrison * * *." As stated previously, when he was an employee of Kasle Steel any expenses which Mr. Morrison incurred in doing work on any projects or ventures for that corporation were reimbursed to him by Kasle Steel. Following Mr. Morrison's termination of his employment relation with Kasle Steel, all of his expenses in performing consulting work were paid by Morrison Consultants. Additionally, Morrison Consultants paid Kasle Steel rent for the office on its premises out of which Mr. Morrison worked. Morrison Consultants' usual practice was to send a bill to Kasle Steel for any amounts due for services. The record discloses that for the period from June 1, 1974, through December 31, 1974, Kasle Steel issued 7 checks payable to the order of Morrison Consultants. The checks were issued on the following dates and in the following amounts: Check No.
Date
Amount
1941
6/25/74
$4,000
2041
7/25/74
4,000
2200
8/29/74
4,000
2286
9/25/74
4,000
2443
10/25/74
4,000
2633
12/20/74
4,000
2638
12/23/74
22,500
*157 Morrison Consultants carried on activities from the time it came into existence through 1977. Mr. Morrison, during this time, was the sole consultant employed by the corporation. In addition to the work done for Kasle Steel, Morrison Consultants was paid for certain work done for other corporations and businesses which were unrelated to Kasle Steel. Some of these corporations and businesses were Jerry's Welding, Baer Industries, Inc., Huron Steel and Freedland Sales. Some of the work for which Morrison Consultants was paid by these other businesses did arise in connection with the performance of services for Kasle Steel. In one instance, Kasle Steel had taken too many orders. These orders could not totally be handled by Kasle Steel since fulfillment of all of the orders in the time called for would exceed its production capacity. Arrangements were therefore made to have Freedland Sales produce some of the excess orders. However, for Freedland Sales to produce these orders required it to arrange to make purchases of materials from various different suppliers. Morrison Consultants was paid by Freedland Sales for the arrangement of these material purchases. Additionally, *158 Morrison Consultants during this time was paid for work done for two other corporations which were owned by the president of Kasle Steel and several other members of the Kasle family, Acme Processing and Carry More Pallets. Carry More Pallets had been organized to produce and sell the steel pallet which had been invented by Mr. Morrison. Mr. Morrison received the consent of Algoma Steel to obtain an American patent on the pallet. Mr. Morrison received 5 percent of the stock of Carry More Pallets after the patent obtained was assigned to that corporation. The work for which Morrison Consultants was paid by Carry More Pallets involved certain consulting work done for that corporation. None of the work done for any of these other businesses was done pursuant to written agreements. Kasle Steel or its officers were aware of these and other outside ventures. In 1977, Mr. Morrison headed a group which formed a Canadian corporation which acquired all of the business and assets of Huron Steel. Previously, Mr. Morrison had presented the prospect of acquiring Huron Steel to Kasle Steel; however, Kasle Steel decided that it did not want to mae the financial commitment to such an acquisition. *159 The Canadian corporation which Mr. Morrison organized, in addition to Huron Steel, subsequently acquired several other businesses. As a result of Mr. Morrison's involvement with the Canadian corporation, Morrison Consultants, since 1978, has been inactive. As of the time of the trial of this case, Mr. Morrison had been married for 29 years.He has for children: Richard, Leslie, Douglas and Nancy, who at the time of the trial in May 1981 were ages 28, 26, 22 and 20, respectively. The following table summarizes the income and deductions claimed by Morrison Consultants on its income tax returns for the period from April 22, 1974, the date of its incorporation, through April 30, 1977: FYE 4/30/74 *
FYE 4/30/75
FYE 4/30/76
FYE 4/30/77
Gross Income
1. Consulting fees
$4,450.00
$82,766.50
$82,043.45 $112,913.00 2. Interest
434.30
538.83 1,362.00 3. Other income
4,333.00 $4,450.00
$83,200.80
$82,582.28 $118,608.00 Deductions
1. Compensation
(officers)
$42,000.00
$35,000.00 $ 35,000.00 2. Other salaries &
wages
1,900.00 2,850.00 3. Rents
333.33
3,999.99
3,000.00 4. Taxes
7.54
1,006.65
1,421.88 2,497.00 5. Interest
238.07
197.29 800.00 6. Depreciation
2.54
30.48 30.00 7. Pension, profit-sharing,
10,500.00
8,750.00 8,750.00 etc. plans
8. Auto rental
697.60
6,314.41
8,225.94 6,955.00 9. Auto expense
45.74
508.96
679.65 440.00 10. Promotion
97.00
1,852.85
6,574.63 1,238.00 11. Entertainment
235.61
5,292.68
1,824.09 6,782.00 12. Travel
79.27
4,323.31
6,557.20 6,029.00 13. Bridge tickets
60.00
360.00
120.00 360.00 14. Office expense
28.77
281.99
425.00 361.00 15. Insurance
260.00
394.00 16. Telephone
34.16
342.46
568.77 803.00 17. Bank charges
14.00
13.25 14.00 18. Professional fees
400.00
1,325.00
1,641.13 1,371.00 19. Legal fees
1,038.50
1,750.00
1,050.00 12,876.00 20. Organization expenses
8.33
100.00
100.00 100.00 21. Miscellaneous
60.25
566.97 204.00 22. Canadian exchange
95.00
1,020.62
(185.81)
(108.00)
23. Contract labor
1,200.00
1,000.00
24. Hospitalization
264.00
360.00 298.00 25. Disability insurance
1,126.00 26. Secretarial service
1,010.00 27. Commissions
500.00 $4,360.85
$82,817.78
$78,820.47 $ 90,680.00 Taxable Income
$ 89.15
$ 383.02
$ 3,761.81 $ 27,928.00 *160 The $4,450 of gross income reported on Morrison Consultants' income tax return for the year ended April 30, 1974, was attributable to the following sources: Kasle Steel
$4,000
Algoma Steel
450
$4,450
On the return, Morrison Consultants claimed no deduction for salary for Mr. Morrison. The $83,200.80 of gross income reported by Morrison Consultants on its income tax return for the taxable year ended April 30, 1975, was attributable to the following sources: Kasle Steel
$66,800.00
Acme Processing
8,000.00
Carry More Pallets
1,466.50
Account Receivable
6,500.00
Interest Income
434.30
$83,200.80
The officer's compensation expense claimed on Morrison Consultants' return consisted of $32,000 for Mr. Morrison's salary and $10,000 as salary for Eila Morrison, the wife of Mr. Morrison. Of the $10,000 claimed as Mrs. Morrison's salary, $5,000 was paid to Mrs. Morrison on December 24, 1974, and the other $5,000 was paid to her on April 21, 1975. None of the $32,000 claimed as a salary deduction for Mr. Morrison was paid to him in the calendar year 1974. *161 The $82,043.45 of consulting fees income reported by Morrison Consultants on its income tax return for the taxable year ended April 30, 1976, was attributable to the following sources: Kasle Steel
$77,050.00 Carry More Pallets
2,993.45 Jerry's Welding
1,500.00 2,000.00 $83,543.45 Add yearend accrual from
Kasle
5,000.00 Reversal of prior years
accrual
(6,500.00)
Total
$82,043.45 The $77,050 attributable to Kasle Steel and reported by Morrison Consultants on its return consisted of the following payments: Date of Payment
Amount
5-30-75
$ 4,000
6-30-75
9,000
7-29-75
4,000
9-02-75
4,000
10-01-75
4,550
10-30-75
4,000
11-30-75
4,000
12-24-75
26,000
1-08-75
4,000
3-01-76
4,500
3-26-76
5,000
4-30-76
4,000
$77,050
The $2,993.45 attributable to Carry More Pallets and reported by Morrison Consultants on its return consisted of the following payments: Date of Payment
Amount
5-30-75
$ 753.98
9-08-75
1,239.47
2-19-76
1,000.00
$2,993.45
Of the $425 claimed by Morrison Consultants on its return as an office expense, $100 was attributable to a check from *162 the corporation dated July 2, 1975, to Leslie Morrison.The $1,900 claimed as a salary expense on the return was for two payments made by check on December 31, 1975, to Nancy A. Morrison and J. Douglas Morrison in the amounts of $950 each. Of the total amount of $8,398.72 claimed as a promotion or entertainment expense on the return, $35.65 was for the cost of an airline ticket for Leslie Morrison from Windsor to Toronto, Canada, and $2,131.98 related to various payments made by the corporation to the Essex Golf and Country Club. These checks to the country club are for the following dates and in the following amounts: Date of Check
Amount
5-06-75
$ 60.00
6-06-75
161.11
7-10-75
484.75
8-08-75
371.37
10-10-75
379.89
11-10-75
120.12
12-10-75
122.93
2-10-76
311.80
3-10-76
120.00
$2,131.97
The $112,913 of consulting fees income reported by Morrison Consultants in its income tax return for the taxable year ended April 30, 1977, was attributable to the following sources: Kasle Steel
$ 64,500.00 Baer Industries, Inc.
7,000.00 Huron Steel
5,000.00 Freedland Sales
44,597.23 Subtotal
$121,097.23 Less prior year accruals
(11,184.23)
Plus yearend accrual
3,000.00 Total
$112,913.00 *163 The $64,500 reported as income from Kasle Steel was based on payments made on the following dates and in the following amounts: Date of Payment
Amount
5-28-76
$ 4,000
5-31-76
4,000
6-29-76
14,000
7-30-76
4,000
9-30-76
4,000
10-29-76
4,000
11-30-76
4,000
12-24-76
22,500
1-28-77
4,000
$64,500
A $2,850 portion of the amount claimed on the return as a salary expense was attributable to three checks, each in the amount of $950, which had been issued to Mr. Morrison's three children, Leslie, Douglas and Nancy. Of the amount claimed on the return as a secretarial service expense, $810 was attributable to payments made by the corporation to Leslie. Mr. Morrison had $40,000 in wages for 1973. These were reported on a Form W-2, which was attached to Mr. Morrison's income tax return for 1973. Mr. Morrison, on his income tax return for 1974, reported as income wages and compensation in the total amounts of $12,610. The amount of $1,000 was paid to him by Acme Processing. The other $11,610 was paid to him by Kasle Steel. Morrison Consultants had not paid any salary to Mr. Morrison in 1974. Mr. Morrison, on his income tax return *164 for 1975, reported income from wages and other compensation in the amount of $32,000, all of which was received from Morrison Consultants.
Mr. Morrison, on his income tax return for 1976, reported income of $30,000 from wages and other compensation, all of which was received from Morrison Consultants. Mr. Morrison, on his income tax return for 1977, again reported income from wages and other compensation in the amount of $30,000. The following table summarizes the adjustments made by respondent in his notices of deficiency in income tax of Mr. Morrison for the years 1974, 1975, 1976, and 1977 in the amounts of $32,202.02, $18,256.51, $31,495.16, and $2,997.34, respectively: 1974
1975
1976
1977
Taxable Income
Reported
$ 9,873.00
$28,104.75 $25,576.00 $26,978.00 Adjustments
1. Income of
Mr. Morrison
a $62,500.00
b $29,543.45 c $49,000.00 d $ 4,000.00 rather than
that of
Morrison
Consultants
2. Sec. 301
distributions
a. Golf &
country club
1,700.00 2,636.00 805.00 b. Automobile
rental
1,695.00 2,740.00 946.00 c. Payments
to children
e 2,000.00 f 2,850.00 g 810.00 d. Promotion &
1,134.00 186.00 1,024.00 entertainment
6,529.00 8,412.00 3,585.00 Basis in stock
(2,500.00)
Sec. 1202
deduction
(2,015.00)
(4,206.00)
(1,793.00)
$ 2,014.00 $ 4,206.00 $ 1,792.00 Taxable Income
Adjusted
$72,373.00
$59,662.20 $78,782.00 $32,770.00 *165 *166 The notice of deficiency for 1974 contained the following explanatory statements: (a) It is determined that income of $62,500 reported as being that of J.J. Morrison Consultants, Inc., for the taxable period ended April 30, 1974, and taxable year ended April 30, 1975, represents your income for the taxable year ended December 31, 1974. The above adjustment is made in accordance with the authority contained in Sections 61(a) and 482 of the Internal Revenue Code. The notice of deficiency for 1975, 1976 and 1977 contained the following explanatory statements: (a) It is determined that income of $29,543.45, $49,000.00 and $4,000.00 reported as being that of J.J. Morrison Consultants, Inc., for the taxable years ended April 30, 1976, April 30, 1977 and April 30, 1978, represents your income for the taxable years ended December 31, 1975, December 31, 1976 and December 31, 1977. The above adjustments are made in accordance with the authority contained in Sections 61(a) and 482 of the Internal Revenue Code. (b) During 1975, 1976 and 1977, J.J. Morrison Consultants, Inc., made payments to you or for your benefit and permitted you to use corporate property without compensation. *167 It is determined that you received long-term capital gains on such distributions which are includable in gross income * * *.
Petitioner has subsequently conceded all of the amounts asserted to be corporate distributions, except for the payments to his children. The following table summarizes the adjustments made by respondent in his notice of deficiency to Morrison Consultants for the taxable years ended April 30, 1976, and April 30, 1977, in determining deficiencies in the respective amounts of $1,562.80 and $2,206.32: FYE 4/30/76
FYE 4/30/77
Taxable Income Reported
$ 3,761.81
$27,928.00
Adjustments
1. Auto related expense
2,452.00
2,839.00
2. Office expense
100.00
3. Salary expense
1,900.00
2,850.00
4. Secretarial service
810.00
5. Promotion & entertainment
3,452.00
3,533.00
Taxable Income Adjusted
* $11,575.81
* $37,956.00
The notice of deficiency contained the following explanatory statements: b) The deduction of $425.00 shown on your return as office expense for the tax year ended April 30, 1976, is reduced by *168 $100.00 because it was not established that more than $325.00 was for an ordinary and necessary business expense or was expended for the purpose designated. Therefore, your taxable income was increased by $100.00. c) The deduction of $1,900.00 and $2,850.00 shown on your return as salaries and wages is not allowed because it has not been established that the payment was for an ordinary and necessary business expense or was expended for the purpose designated. Therefore, your taxable income was increased by $1,900.00 and $2,850.00 for the tax years ended April 30, 1976 and April 30, 1977. d) The deduction of $1,010.00 shown on your return as secretarial service expense for the tax year ended April 30, 1977, is reduced by $810.00. Because it has not been established that more than $200.00 was for an ordinary and necessary business expense or was expended for the purpose designated. Therefore, your taxable income was increased by $810.00. e) The deduction of $8,398.72 and $8,020.00 shown on your return as promotion and entertainment for tax years ended April 30, 1976 and April 30, 1977, is reduced by $3,152.00 [sic] and $3,533.00 because it has not been established that *169 any amount more than $4,946.72 and $4,487.00 was for an ordinary and necessary business expense or that it met the requirements of Section 274 of the Internal Revenue Code. Therefore, your taxable income was increased by $3,452.00 and $3,533.00. Petitioner has subsequently conceded all of the adjustments for auto-related expense and all of the adjustments for promotion and entertainment, except for $35.65 of the promotion and entertainment expense for the fiscal year 1976 attributable to an airline ticket purchased for Leslie Morrison.
Pursuant to leave granted, respondent filed an amendment to answer in the case involving Morrison Consultants which contained the following alternative contentions: 7. FURTHER ANSWERING the petition, and in support of the respondent's claim for an increased deficiency in income tax for the taxable years ended April 30, 1976, and April 30, 1977, and to conform the pleadings to the proof, the respondent alleges as follows: (e). At the trial of this case, evidence was also introduced which tends to prove that if the income reported on [Morrison] Consultants' returns for its years ended April 30, 1976 and April 30, 1977, was *170 [Morrison] Consultants' income, then [Morrison] Consultants was a personal holding company (within the meaning of I.R.C. sec. 542) during its years ended April 30, 1976 and April 30, 1977, in that (1) James J. Morrison owned all of [Morrison] Consultants' stock during the years 1975, 1976 and 1977; and (2) at least 60 percent of [Morrison] Consultants' adjusted ordinary gross income during said years, was income earned pursuant to personal service contracts as defined in section 543(a)(7). Accordingly, [Morrison] Consultants is liable for personal holding company tax for its years ended April 30, 1976 and April 30, 1977. OPINION The first issue for decision is whether certain income reported by Morrison Consultants is that of Mr. Morrison, rather than that of Morrison Consultants, under the assignment of income doctrine. At the outset, we note that respondent does not argue that Morrison Consultants is a sham and, in fact, he concedes that it is to be treated as a corporation for Federal tax purposes. The assignment of income doctrine, under which income is to be taxed to him who earned it, is a fundamental principle of the income tax law. *171 United States v. Basye,410 U.S. 441, 450-451 (1973). See Lucas v. Earl,281 U.S. 111 (1930). However, the determination of the extent to which the doctrine is applicable where a one-man service corporation is involved, is difficult. A corporation, in addition to being a separate legal entity, is also a separate taxpayer for Federal tax purposes. Moline Properties, Inc. v. Commissioner,319 U.S. 436, 438-439 (1943). Further, it is axiomatic that a corporation can act only through its agents. Commissioner v. Consolidated Premium Iron Ores, Ltd.,265 F.2d 320, 323 (6th Cir. 1959); Keller v. Commissioner,77 T.C. 1014, 1032 (1981), appeal filed (10th Cir. Apr. 2, 1982). Thus, merely labeling the individual as being the "earner" of the income or attempting to apply the otherwise well-established precept that "substance controls over form" to draw the simplistic conclusion that the individual rather than the corporation is the "earner" of the income is not satisfactory. Johnson v. Commissioner,78 T.C. 882, 890-891 (1982). In determining who "earned" the income and whether the assignment *172 of income doctrine is applicable to a given situation, this Court has considered who controlled the performance of the services from which the income was earned. Under this approach, it is essential for the individual to show that at the time services were performed he was acting in the capacity of an agent-employee and rendering the services on behalf of the corporation rather than for his own individual account. Further, there must exist a contract or similar indicium, between the corporation and the third party to whom the services are being furnished, recognizing the corporation's controlling position. Johnson v. Commissioner,supra;Pacella v. Commissioner,78 T.C. 604 (1982); and Keller v. Commissioner,supra.See also, American Savings Bank v. Commissioner,56 T.C. 828, 839-840 (1971). We find respondent's assertion of the assignment of income doctrine to be unwarranted on the facts before us. The record shows both that Mr. Morrison was acting as an agent-employee for the corporation and that the corporation controlled the performance of the services which gave rise to the income in question.Mr. *173 Morrison, on April 26, 1974, entered into an employment agreement with Morrison Consultants under which he agreed not only to act as chief executive officer of the corporation but also to carry out any duties in connection with any work which the corporation might have contracted or agreed to perform for others. The corporation's major client, Kasle Steel, entered into a contract with the corporation. [3] With respect to other clients or businesses for whom services were performed, Mr. Morrison testified that he had always dealt with those other third parties in a representative capacity.Since the record bears out that Mr. Morrison was acting as the corporation's agent-employee in any dealings he had with Kasle Steel, the client whose payments comprise the bulk of the income here in issue, we see little reason to doubt his testimony that he was similarly acting in a representative capacity in any dealings he had with the other third parties. In this respect, we believe it would be totally unrealistic to expect, or require, that a written contract be entered into between Morrison Consultants and any new client on each and every occasion when a third party called and requested that *174 consulting services be performed for it. From the arguments respondent advances, we conclude his real quarrel is that Mr. Morrison chose the corporate form rather than a sole proprietorship as the business form for his consulting business. Respondent has pointed out that Mr. Morrison, although *175 married, as a nonresident alien could not file a joint return. See section 6013(a)(1). Respondent urges that the primary purpose for the formation of the corporation was to have the income from consulting taxed at the lower corporate tax rates. This contention is unsupported by the record. Since Morrison Consultants carried on business activity and is to be treated as a corporation for Federal tax purposes, the income in issue is clearly that of the corporation rather than that of Mr. Morrison individually. To tax the income to Mr. Morrison under the assignment of income doctrine would, in effect, under the circumstances here present to be disregard the corporate entity. [4]
*176 The next issue for decision is whether respondent properly reallocated the income in issue to Mr. Morrison pursuant to section 482. Section 482 uthorizes the Commissioner to reallocate gross income, deductions, credits, or allowances between organizations, trades, or businesses, controlled by the same interests, if he determines that such reallocation is necessary in order to prevent evasion of taxes or to clearly reflect the income of such organizations, trades, or businesses. The purpose of section 482 is to place dealings between controlled taxpayers on an arm's length basis as if such dealings had taken place between independent and uncontrolled taxpayers dealing at arm's length with each other. Achiro v. Commissioner,77 T.C. 881, 896-897 (1981); section 1.482-1(b)(1), Income Tax Regs. The Commissioner has considerable discretion in exercising the authority granted to him under section 482 and his determinations must be sustained unless he has abused this authority. Ach v. Commissioner,42 T.C. 114, 125-126 (1964), affd. 358 F.2d 342 (6th Cir. 1966). In reviewing the Commissioner's actions here, the focus is on whether the *177 total compensation actually furnished to Mr. Morrison reflects that which would have been provided to him pursuant to an arrangement entered into between independent and unrelated parties dealing at arm's length. Sections 1.482-1(c) and -2(b)(3), Income Tax Regs. Petitioner maintains that respondent's reallocation of most of the corporation's income from the performance of consulting services to Mr. Morrison individually was an abuse of discretion. Petitioner contends that the compensation furnished to Mr. Morrison is reflective of the amount which would have been arrived at in arm's length dealing between unrelated parties. We agree with petitioners as to the years 1974, 1975, and 1976. Counsel for respondent attempts to justify the reallocation made by pointing to the wide gap between the consulting service income reported by the corporation and the salary paid Mr. Morrison. For its fiscal years 1975, 1976, and 1977, the corporation reported $82,766.50, $82,043.45, and $112,913, respectively, of consulting services income; while Mr. Morrison, for the calendar years 1975, 1976, and 1977, was paid salaries in the respective amounts of $32,000, $30,000, and $30,000. Initially, *178 we note that the gap is hardly as great as respondent has set forth in his argument. The consulting service income amounts that he cites, most all of which he reallocated to Mr. Morrison, represent gross income figures prior to reduction for expenses. The parties have stipulated that the wages Mr. Morrison received in 1973, his first full year of employment with Kasle Steel, totaled $40,000. Petitioners maintain that this $40,000 paid in 1973 is highly indicative of what an arms' length amount would be for each of the years in issue since Mr. Morrison and Kasle Steel were unrelated and the terms of his compensation as an employee of that corporation were obviously arrived at as a result of arm's length bargaining between independent parties. Petitioners point out that upon adding to the respective amounts of $32,000, $30,000, and $30,000 paid Mr. Morrison as salary in each year by Morrison Consultants, the amounts contributed on his behalf to a pension plan in each year, $10,500, $8,750, and $8,750, respectively, the total for each year approximates very closely this $40,000 amount.
In determining whether the consideration furnished in each of the years in issue reflects an *179 arm's length amount, we must first ascertain what amount of compensation and other benefits would have been provided in an arm's length situation. Keller v. Commissioner,supra at 1025; Pacella v. Commissioner,supra at 619-620; Fogelsong v. Commissioner,77 T.C. 1102, 1105 (1981), on remand from 621 F.2d 865 (7th Cir. 1980), revg. a Memorandum Opinion of this Court, reappealed 7th Cir. February 6, 1982. In this respect, petitioners have not presented as complete a picture of the total consideration furnished by Kasle Steel in 1973 as is necessary. From the stipulation that Mr. Morrison's wages for 1973 were in the amount of $40,000, we assume that he had no deferred compensation in that year from Kasle Steel. The record does indicate that he might have received certain benefits in addition to salary when he was at Kasle Steel.However, there is nothing in the record indicating what these benefits were, much less what dollar amount could be attached to their being provided. While it is very probable that the benefits furnished by Kasle Steel were nowhere near as liberal as those later provided by Morrison Consultants, *180 it would be incorrect to hold that such benefits are to be ignored in establishing what an arm's length amount of consideration would be. This is not to say that we find respondent's actions here to be supportable. As noted prior, respondent reallocated the gross income earned by the corporation from performance of consulting services for various businesses without any reduction for expenses. Clearly, in light of what the rendition of such services entailed, a good part of the expenses the corporation claimed on its return were incurred directly, or indirectly, in earning such income. In addition to the fact that respondent reallocated almost all of the income of Morrison Consultants with no consideration of accompanying expenses, the record discloses no attempt on his part to relate the amount reallocated to reflect an arm's length transaction between unrelated taxpayers.
We have concluded that neither of the respective positions put forth by the parties can be sustained in its entirety. Since Mr. Morrison is the sole employee through which the corporation renders its consulting services, one would expect that in an arm's length situation as the income of the corporation increased, *181 his salary would also increase. See Keller v. Commissioner,supra at 1025, in which we stated: Assuming that Keller, Inc.'s share of partnership profits from MAL and its fees from MAL, Inc., continued to be on a par with those payments in the pre-incorporation years, one would expect petitioner, in an arm's-length transaction with an unrelated party, to have bargained for a total compensation package which would approximate the amounts he previously received as a sole proprietor. One would similarly expect that petitioner's total compensation would also reflect any increase in MAL and MAL, Inc.'s earnings over and above the pre-incorporation years. To the extent of any meaningful disparity between these amounts, it is our view that the Commissioner is correspondingly justified in making an adjustment in petitioner's income to properly reflect the true taxable income he earned in his capacity as Keller, Inc.'s employee. See sec. 1.482-2(b)(1), Income Tax Regs. * * * Cf. Fogelsong v. Commissioner,supra at 77 T.C. 1106.Since the record shows that on its returns for its fiscal years 1975 and 1976 the corporation reported, *182 respectively, $383.02 and $3,761.81 in taxable income, and Mr. Morrison's total compensation for these years was approximately the amount he was receiving at Kasle Steel, we find that an arm's length amount of consideration was provided to Mr. Morrison in each of those years. In its first taxable year ended April 30, 1974, a period which covered one month, the corporation paid no salary to Mr. Morrison. However, in its fiscal year 1975 the corporation paid Mr. Morrison $2,000 more in salary and made $1,750 more in pension plan contributions that it did in its following two fiscal years 1976 and 1977, thus sufficiently making up, in our view, for the fact that no salary was paid him for the corporation's first taxable year. This, we conclude that no reallocation in such year pursuant to section 482 would be in order. We thus find respondent's actions in reallocating the corporation's income in its fiscal years 1974, 1975 and 1976, to be arbitrary, capricious, and unreasonable. Achiro v. Commissioner,supra at 900. Such reallocations made by respondent constituted an abuse of his discretion and were improper. The corporation's return for its fiscal year *183 1977 discloses $112,913 of consulting service income and $27,928 of taxable income. In our view, with this improvement in receipts and income, the parties, in an arm's length transaction, would have substantially increased the compensation of the officer responsible for the increase.We therefore sustain respondent's reallocation for the year 1977 to the extent of $20,000. Reallocation in this amount is necessary in order that the compensation furnished Mr. Morrison reflects an arm's length amount. Since the corporation reports its income on a fiscal year basis and Mr. Morrison reports his income on a calendar year basis, it is necessary to divide this reallocation from the corporation between Mr. Morrison's calendar years 1976 and 1977. Respondent reallocated $64,500 of the corporation's income for its fiscal year ended April 30, 1977, to Mr. Morrison. Of this amount, he allocated $4,000 to Mr. Morrison's calendar year 1977 and the balance to his 1976 calendar year. We conclude that the $4,000 allocation to 1977 is reasonable on the basis of the record and sustain this allocation by respondent.This leaves a $16,000 balance to be allocated to Mr. Morrison's calendar year 1976. *184 The next issue for decision is whether Morrison Consultants is a personal holding company subject to a personal holding company tax on its undistributed personal holding company income for its fiscal years 1976 and 1977. Section 541 imposes on any personal holding company, a personal holding company tax equal to 70 percent of its undistributed personal holding company income. Section 542(a) defines a personal holding company to be any corporation where (1) at least 60 percent of its adjusted ordinary gross income (as defined in section 543(b)(2)) for the taxable year is personal holding company income (as defined in section 543(a)), and (2) at any time during the last half of its taxable year more than 50 percent in value of its outstanding stock is owned by or for not more than five individuals. "Adjusted ordinary gross income" is determined by taking the gross income of the corporation and making the modifications provided for in section 543(b)(1) and 543(b)(2). The term "personal holding company income" is defined to be that portion of the adjusted ordinary gross income which consists of any of certain enumerated categories of income, including amounts received under personal *185 service contracts under certain circumstances. Section 543(a). Section 545 defines the term "undistributed personal holding company income" to be the taxable income of a personal holding company adjusted in the manner provided by that section. Since Mr. Morrison owned all the stock of Morrison Consultants, the stock ownership requirement of section 542(a)(2) is met. Thus, Morrison Consultants will be a personal holding company for each of the years in issue if at least 60 percent of its adjusted ordinary gross income for each year is personal holding company income. Morrison Consultants reported gross income of $82,582.28 for its fiscal year 1976, and $118,608 of ross income for its fiscal year 1977. Its adjusted ordinary gross income for its fiscal year 1976 was also in the amount of $82,582.28.However, since we sustain respondent's reallocation of income for the year 1977 to the extent of $20,000, the gross income of the corporation for this year is reduced to $98,608, thereby making its adjusted gross ordinary income for $1977 $98,608. Section 543(b). For its fiscal year 1976, Morrison Consultants reported $82,043.45 in consulting fees and $538.83 in interest income. *186 For its fiscal year 1977, Morrison Consultants reported $112,913 [5] in consulting fee income and $1,362 of interest income. The interest earned in either of the years constitutes personal holding company income. Section 543(a)(1). Whether any portion of the consulting fees reported for each year is personal holding company income depends upon whether such amounts were received from personal service contracts under the circumstances described in section 543(a)(7). [6]
*187 Respondent contends that the consulting service income earned in each year in issue which is attributable to Kasle Steel and Freedland Sales constitutes amounts received under a personal service contract under the circumstances provided in section 543(a)(7) and is personal holding company income. Respondent contends that it is indisputable that the contract between Kasle Steel and Morrison Consultants specifically designates Mr. Morrison as the individual who is to perform the consulting services. Petitioner denies that any of the income from Kasle Steel or Freedland Steel is personal holding company income. Petitioner further argues that any amounts received from Kasle Steel, in excess of the $4,000 in monthly payments, should not be classified as personal holding company income. Petitioner, in effect, is arguing that the bonus amounts paid by Kasle Steel were not paid pursuant to a contract which designated Mr. Morrison as being the individual who would perform the services called for. The mere fact that the parties to the agreement may have expected that a certain individual would perform the services called for under the contract does not mean that the individual is *188 designed in that contract as the person who is to perform the services. Thomas P. Byrnes, Inc. v. Commissioner,73 T.C. 416, 423-424 (1979); Claggett v. Commissioner,44 T.C. 503 (1965). Since respondent is raising a new issue not raised in his notice of deficiency, he bears the burden of proof on all matters connected with the issue. Rule 142(a), Tax Court Rules of Practice and Procedure. On the record presented, he has not carried his burden to show that the amounts received from Freedland Sales were received under a personal service contract under the circumstances described in section 543(a)(7). However, the agreement entered into by Kasle Steel and Morrison Consultants does specifically provide that Morrison Consultants is to furnish the full-time services of Mr. Morrison.Further, the contract provides that the agreement shall be terminated "forthwith upon the inability of [Morrison] Consultants, for whatever reason, to furnish the fulltime services of [Mr.] Morrison * * *." Although the document embodying the parties' contract did not contain any provision for a bonus, the bonus amounts paid to Morrison Consultants by Kasle Steel clearly *189 arose in connection with the written agreement. When Mr. Morrison had been an employee of Kasle Steel, he and the president of that corporation had reached an informal understanding concerning the payment of bonuses to Mr. Morrison. After Mr. Morrison terminated that employment relationship, Kasle Steel arranged to have Mr. Morrison's services by entering into an agreement with Morrison Consultants.Morrison Consultants and Kasle Steel informally agreed that the previous bonus arrangement would also apply with respect to Morrison Consultants. At the trial, the president of Kasle Steel testified that these bonus amounts were paid to Morrison Consultants pursuant to such understanding. Thus, the written agreement together with the oral understanding for practical purposes constituted a single contract. In such contract, Mr. Morrison was designated as the individual who was to perform the services. Able Metal Products, Inc. v. Commissioner,32 T.C. 1149 (1959); Allen Machinery Corp. v. Commissioner,31 T.C. 441 (1958). Since the consulting service income attributable to Kasle Steel is personal holding company income under section 543(a)(7), 60 percent *190 of Morrison Consultants' adjusted gross income in its fiscal year 1976, but not in its fiscal year 1977, is personal holding company income. Section 542(a)(1). We find that Morrison Consultants was a personal holding company in its fiscal year 1976. The last two issues for decision are (1) whether certain payments made to Mr. Morrison's children by Morrison Consultants were for properly deductible business expenses of the corporation, and (2) whether such payments constituted a distribution with respect to Mr. Morrison's stock under section 301. Since there would be no section 301 distribution to Mr. Morrison to the extent that expenditures made by Morrison Consultants were valid business expenses, we will first discuss the deductibility of the expenditures made by the corporation. See section 1.301-1(c), Income Tax Regs.
Respondent contends that the expenditures are not deductible by the corporation because either (1) the expenditures were not ordinary and necessary business expenses, or (2) Morrison Consultants has failed to meet the substantiation requirements of section 274. Mr. Morrison testified at trial that the payments were made either as compensation for secretarial *191 or typing services performed by his two daughters, Leslie and Nancy, or for the running of errands by Leslie, Nancy or Douglas. Mr. Morrison stated that his daughter Nancy was a very good typist and that the $950 payments made to her by the corporation in each of its fiscal years 1976 and 1977 were either for secretarial work or for her performance of office duties. Mr. Morrison further stated that the $100 deducted by the corporation as an office expense on its return for its fiscal year 1976 was paid to his daughter Leslie for either secretarial work or typing. Mr. Morrison stated that in 1977, after Morrison Consultants was no longer involved with Kasle Steel, the corporation had retained Leslie's services to perform typing on an almost full-time basis. With respect to the $950 payments made by the corporation to his son Douglas in each of its fiscal years 1976 and 1977, Mr. Morrison stated that the amounts were paid either for travel or as compensation to his son for travel between various cities. Since petitioners have offered only the testimony of Mr. Morrison, it is clear that section 274 would disallow any deductions for payments made to the children for traveling expenditures. *192 Section 274 provides in pertinent part as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any travel expense (including meals and lodging while away from home), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * * (B) the time and place of the travel * * * (C) the business purpose of the expense * * *. Petitioners have failed to introduce into evidence any receipts, bills or accounts to show that the amounts expended were for the cost of traveling. See generally, sections 1.274-5(c)(1) through -5(c)(3), Income Tax Regs. The corporation clearly cannot obtain a deduction for the cost of such travel, even assuming such expenditure was an ordinary and necessary business expense, since it has not submitted adequate records or any other sufficient evidence corroborating the testimony of Mr. Morrison to substantiate the elements required under section 274(d). While it is clear that any amounts paid for the travel of Mr. Morrison's son, Douglas, cannot be deducted *193 by the corporation, the application of section 274 so as to disallow a deduction by the corporation for a $35.65 airline ticket for Leslie Morrison from Windsor to Toronto, Canada, requires further discussion. The parties have stipulated that $35.65 was expended for the purchase of the airline ticket. Thus, the only remaining element of the expenditure which petitioners must substantiate is the business purpose for the such trip. Section 1.274-5(b)(2) and -5(c)(2), Income Tax Regs. Unfortunately, petitioner has not sustained its burden of proof. Mr. Morrison in his testimony candidly acknowledged that he could not recall what the payment of the $35.65 check drawn to his daughter was for. Mr. Morrison only could speculate that the corporation may have paid for an airline ticket as a result of his daughter's driving down with someone to deliver certain materials or items needed. Mr. Morrison conjectured that, assuming such circumstance, the corporation would have paid the cost of his daughter's expenses back. We find, therefore, that under section 274 no deductions for travel can be allowed to the corporation. As far as the deductibility of the amounts paid to the children *194 by the corporation is concerned, the remaining issue is whether a portion of such payments might be deductible as compensation. Mr. Morrison testified that, for the most part, payments made to his two daughters were to compensate them for secretarial or other office work they had performed for the corporation. The payments made to his son, he testified, were either to compensate the son for the travel between the various cities or to pay for the son's travel expenditures. However, as discussed above, to the extent that the corporation was paying for the travel expenses of the son, section 274 precludes any deduction of such amount by the corporation. We would note also that Mr. Morrison failed to specify or at least give an approximation of the amount of each payment made to the son which would have been for compensation rather than for travel expenses. Section 162(a)(1) provides that a reasonable allowance for salaries or other compensation for personal services actually rendered, when incurred or paid as an ordinary and necessary expense in carrying on any trade or business, shall be allowed as a deduction. See generally, section 1.162-7, Income Tax Regs.
In 1975, Mr. Morrison's *195 children, Leslie, Douglas and Nancy, were respectively ages 20, 16 and 14. None of the children testified at trial, and the corporation did not introduce any specific evidence as to actual work performed by the children, other than the general testimony of Mr. Morrison. Mr. Morrison, in attempting to justify the amounts paid to each of his children, stated that the amounts were paid pursuant to the advice of his accounting firm. Mr. Morrison further added that under Canadian law any individual over 15 years of age had to be paid the standard wage set for that industrial establishment. Mr. Morrison further estimated that each of his children would have been paid at an hourly rate of $7.50 per hour. It is clear that under section 162, in order to be deductible the amounts paid must be for services actually rendered and the amount for which a deduction is allowed must not exceed what is reasonable under the circumstances. Sections 1.162-7(a) and -7(b)(3), Income Tax Regs. The evidence presented by petitioner is very unsatisfactory. Mr. Morrison's two younger children, Douglas and Nancy, were in their teens during the time in issue. While the performance of typing and other *196 office work and the running of errands are certainly within the capability of persons of such age, we are still somewhat skeptical whether any actual services were rendered by these two children. Leslie, the other of the three children, was somewhat older than the other two children. However, as counsel for respondent points out, the payments may have constituted distributions of dividends rather than compensation for services. Section 1.162-7(b)(1), Income Tax Regs. The record further shows that Mr. Morrison's wife was clearly a competent secretary and able to perform any secretarial tasks needed, since in previous years she had been employed as a secretary to a justice on the Ontario Supreme Court. Moreover, while Morrison Consultants rented an office at Kasle Steel, arrangements could certainly have been made to have the secretarial or office staff at Kasle Steel perform any secretarial tasks that were needed. In light of this record, we find that petitioners have not carried their burden of proof in showing that the amounts paid to the younger two children were for services actually rendered, and, as will be discussed, infra, constituted the distribution of a dividend *197 to Mr. Morrison. Of the payment to Mr. Morrison's daughter Leslie, we have determined that a portion of the payments made to her by the corporation in its fiscal year 1977 is deductible as compensation; however, we find that no portion of the payment made to her in the previous year is deductible. Bearing heavily against petitioners, for the inexactitude which is of their own making, we find that 30 percent of both of the two payments made to the daughter Leslie in the corporation's fiscal year 1977 is properly deductible. Respondent contends that the payments made to Mr. Morrison's children which were not properly deductible by the corporation constitute a section 301 distribution to Mr. Morrison. It is well established that a payment made to a family member of a shareholder can constitute a section 301 distribution by the corporation with respect to the stock of the shareholder. Green v. United States,460 F.2d 412, 419 (5th Cir. 1972); Epstein v. Commissioner,53 T.C. 459, 474-475 (1969). In proper circumstances it is appropriate to hold that a payment to a family member represents a distribution by the corporation to the shareholder for he *198 enjoys the use of such property as much as if the corporation had distributed it directly to him. Epstein v. Commissioner,supra.
Section 274 disallows deductions to the corporation for failure of proper substantiation even though the amounts would otherwise be deductible under section 162. It does not follow, therefore, that merely because section 274 precludes any deduction of expenditure by the corporation such expenditure represents income to the shareholder. Nichols, North, Buse Co. v. Commissioner,56 T.C. 1225, 1238-1239 (1971); Ashby v. Commissioner,50 T.C. 409, 417-418 (1968). In determining whether the expenditure by the corporation represents income to the shareholder, it is therefore necessary to decide whether the expenditure primarily benefited the shareholder personally rather than furthered the interest of the corporation. Ireland v. United States,621 F.2d 731, 735 (5th Cir. 1980); Ashby v. Commissioner,supra.Petitioner here has failed to show that any of the travel taken by the son was made to further the interest of the corporation. We find the entire amount of payments *199 to the son, whether for travel or for some other purpose, and the payments to the two other children as well, except as previously noted, to be distributions under section 301 to Mr. Morrison. Having found that distributions under section 301 were made to Mr. Morrison, the tax treatment of such distributions must be determined. Sections 301(c)(1) and 316(a) generally provide that to the extent of earnings and profits such distributions will be a dividend to the shareholder. However, under the special rule of section 316(b)(2) it is also provided that any distribution made during a taxable year in which the corporation is a personal holding company shall be a dividend to the extent of the corporation's undistributed personal holding income. Since we have held that the income reported by Morrison Consultants was its income and also found that such income for its fiscal years 1975 and 1976 was improperly reallocated by respondent to Mr. Morrison under section 482, Morrison Consultants clearly will also have both current earnings and profits as well as accumulated earnings and profits for each of the years in which distributions were made. Section 316(a)(1) and (a)(2). Additionally, *200 to the extent that any of the distributions made during such years were dividends, such amount might give rise to a deduction for dividends paid which would recude the amount of the corporation's undistributed personal holding company income and therefore its liability for any personal holding company tax. Sections 545, 561 and 564. See, also, Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 747-748 (1973). Accordingly, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Morrison Consultants was incorporated under the provisions of Michigan law governing general business corporations, Mich. Stat. Ann. sec. 21.200(101) et seq (Latta 1974), rather than under the Michigan Professional Service Corporations Act, Mich. Stat. Ann. sec. 21.315(1) et seq (Latta 1974).↩
*. Initial return filed for period April 22, 1974 through April 30, 1974.↩
a. Consists of $4,000 from Kasle Steel reported on corporation's return for its fiscal year 1974 and $58,500 portion of income attributable to Kasle Steel, Acme Processing, Carry More Pallets and Account Receivable reported on corporation's return for its fiscal year 1975. ↩
b. Consists of $24,266.50 balance of income attributable to Kasle Steel, Acme Processing, Carry More Pallets and Account Receivable reported on corporation's return for its fiscal year 1975 and $59,550 from Kasle Steel and $1,993.45 from Carry More Pallets reported on corporations' return for its fiscal year 1976. The parties have stipulated that respondent, in determining the deficiencies for 1975, 1976 and 1977, offset the income he determined to be that of Mr. Morrison by the amounts previously reported by him as income from the corporation. Even taking into account the $32,000 of compensation from the corporation, we are unable to arrive at the same $29,543.45 amount stated in the statutory notice ($85,759.75 - $32,000 = $53,759.95). There is nothing in the record indicating what further adjustments or allowances, if any, respondent may have made to arrive at such amount. ↩
c. Consists of $17,500 from Kasle Steel and $1,000 from Carry More Pallets reported by the corporation on its return for its fiscal year 1976 and $60,500 from Kasle Steel reported on the corporation's return for its fiscal year 1977, less the $30,000 of compensation Mr. Morrison reported for 1976. ↩
d. Consists of $4,000 from Kasle Steel reported on the corporation's return for its fiscal year 1977. ↩
e. Consists of $100 deduction for "office expense" claimed by the corporation for its fiscal year 1976 attributable to July 2, 1975, check payable to Leslie Morrison and $1,900 deduction for "salary expense" claimed by the corporation for its fiscal year 1976 attributable to two checks dated December 31, 1975, payable to Nancy A. Morrison and Douglas Morrison. ↩
f. Consists of payments of $950 each to Nancy, Douglas and Leslie Morrison which the corporation deducted as "salaries and wages" on its return for the fiscal year 1977. ↩
g. Consists of $810 of payments made to Leslie Morrison which the corporation deducted as "secretarial service" on its return for the fiscal year 1977.↩
*. Amounts as stated on Form 5278 (Statement--Income Tax Changes) contained in notice of deficiency.↩
3. Respondent urges that since a written agreement was entered into only on December 20, 1974, Kasle Steel did not recognize the controlling position of Morrison Consultants until such date. However, Mr. Morrison testified that such date was merely the time at which the parties got around to formalizing their agreement in writing. There is further evidence of record corroborating this testimony. The written agreement itself was made retroactive to April 1, 1974. Further, much prior to the December 20, 1974, date of the written agreement's execution, Kasle Steel issued checks which were payable to the order of Morrison Consultants. Additionally, highly significant is the fact that Kasle Steel as of April 1, 1974, was no longer paying any of the expenses incident to the rendition of the consulting services and that Morrison Consultants was paying Kasle Steel rent for office space.↩
4. In making this finding, we have not overlooked the fact that Morrison Consultants was formally incorporated on April 22, 1974, although the decision to incorporate was made on March 28, 1974. It was paid $4,000 by Kasle Steel for the entire month of April. The mere fact that the corporation was not formally incorporated until April 22, 1974, does not prevent the income from being that of the corporation rather than that of Mr. Morrison. The record here clearly shows that prior to April 22, 1974, Mr. Morrison was acting on behalf of the corporation to be formed, and for this reason no proration of the $4,000 is necessary. Cf. Ajax Engineering Corp. v. Commissioner,17 T.C. 87 (1951), affd. 196 F.2d 727↩ (3d Cir. 1952).
5. The $112,913 of consulting fees included the $64,500 received by Morrison Consultants from Kasle Steel which respondent allocated to Mr. Morrison. Since we have sustained respondent's reallocation to the extent of $20,000, there would remain $44,500 of receipts from Kasle Steel in the fiscal year 1977. ↩
6. Sec. 543(a)(7) provides as follows: SEC. 543. PERSONAL HOLDING COMPANY INCOME. (a) General Rule.--For purposes of this subtitle, the term "personal holding company income" means the portion of the adjusted ordinary gross income which consists of: (7) Personal service contracts.-- (A) Amounts received under a contract under which the corporation is to furnish personal services; if some person other than the corporation has the right to designate (by name or by description) the individual who is to perform the services, or if the individual who is to perform the services is designated (by name or by description) in the contract; and (B) amounts received from the sale or other disposition of such a contract. This paragraph shall apply with respect to amounts received for services under a particular contract only if at some time during the taxable year 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for the individual who has performed, is to perform, or may be designated (by name or by description) as the one to perform, such services.↩